ORDERED in the Southern District of Florida on April 2, 2010.



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                              Case No. 08-22814-BKC-AJC

8699 BISCAYNE, LLC,                                    Chapter 11

       Debtor.
_____/
8699 BISCAYNE, LLC, Debtor-in-Possession,    Adversary No. 08-01749-AJC

       Plaintiff,

v.

INDIGO REAL ESTATE, LLC, as assignee of
WESTLB AG & WESTLB AG, a Foreign Corporation;
BUILDERFINANCIAL CORP., a Florida corporation;
BUILDER FUNDING, LLC, a Delaware limited liability
Company; BFSPE, LLC, a Delaware limited liability
Company; and BFWEST, LLC, a Delaware limited liability
company,

       Defendants.
_____/

## MEMORANDUM DECISION DENYING WESTLB AG NEW YORK BRANCH AND INDIGO REAL ESTATE LLC'S MOTION TO DISMISS DEBTOR'S SECOND AMENDED COMPLAINT

THIS MATTER came before the Court on October 14, 2009 at 3:00 p.m. for a hearing on *WestLB AG New York Branch and Indigo Real Estate LLC's Motion to Dismiss Debtor's Second Amended Complaint* [D.E. # 146] (the "*Motion*"). Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants WestLB and Indigo raised various grounds for dismissal of Debtor 8699 Biscayne, LLC's *Second Amended Complaint to Determine the Extent, Validity and Priority of Lien; Equitable Subordination; Fraudulent Transfer and Related Relief* [D.E. # 132, Ex. 3] (the "*Second Amended Complaint*").

### Standard for Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 1950. In evaluating the sufficiency of a plaintiff's pleadings, the court should "make reasonable inferences in plaintiff's favor," though it is "not required to draw

plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)) (quotation omitted). And "[i]t is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render the element plausible." *Rivell v. Private Healthcare Sys.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

In the case at hand, the Debtor's *Second Amended Complaint* alleges three Counts against both Defendants WestLB and Indigo: Count I. Fraudulent Transfer; Count II. Equitable Subordination; and Count III. Usury. [D.E. # 132, Ex. 3]. This Court finds that Plaintiff has properly stated a cause of action on all three Counts and, thus, denies the *Motion to Dismiss* on all Counts and as to both Defendants WestLB and Indigo.

### Count I. Fraudulent Transfer

"The elements of a case under Bankruptcy Code [11 U.S.C.] section 548 and Florida Statutes section 726.105(1)(a), are as follows: a. The debtor must have transferred the property within one year (under section 548) or four years (under section 726.105) of filing of the bankruptcy petition. . . . b. The transfer must have been made with the actual intent to hinder, delay, or defraud any entity to which the debtor was indebted." *Bauman v. Bliese (In re McCarn's Allstate Fin., Inc.)*, 326 B.R. 843, 848 (Bankr. M.D. Fla. 2005). "Bankruptcy Code section 548 and Florida Statutes section 726.105 are substantially the same, and both address claims under the same legal framework." *Id.* at 849.

In this case, Plaintiff 8699 Biscayne, LLC has properly alleged the first element of the cause of action: within four years of filing of its bankruptcy petition, the Promissory Note reflecting a debt from Plaintiff to Builder Defendants (as defined in the *Second Amended Complaint*) in the amount of four million two hundred forty seven thousand one hundred fifty

and 00/100 dollars as well as the Mortgage, Assignment of Leases and Security Agreement Between Plaintiff as mortgagor and Builder Defendants as mortgagees were transferred.

As to the fraudulent intent element, section 726.105(2) guides that "consideration may be given, among other factors, to whether: (e) The transfer was of substantially all the debtor's assets; (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." Given such statutory provision, Plaintiff, here, has set forth numerous facts that are more than "suggestive enough to render the [fraudulent intent] element plausible." *See Rivell v. Private Healthcare Sys.*, 520 F.3d 1308, 1309 (11th Cir. 2008). The *Second Amended Complaint* alleged, in pertinent part:

> 8699 Biscayne has transferred to or for the benefit of the Defendants the Note and Mortgage (the "Transfer") whose value is nearly double the value of the collateral supplied by 8699 Biscayne.
> The Defendants did not provide reasonably equivalent value in exchange for the Transfer.
> At the time of the Transfer, 8699 Biscayne was insolvent, or became insolvent as a result of the Transfer in that after the Transfer the fair value of the property held by 8699 Biscayne was less than the sum of its debts.
> After the time of the Transfer, the property remaining in the ownership and control of 8699 Biscayne was unreasonably small capital for the business venture in which it engaged.
> At the time of the Transfer, 8699 Biscayne incurred debts that would be beyond its reasonable ability to pay as its debts matured.

Compl. ¶¶ 37, 38, 40, 41, & 42. It is well established that facts, such as those of Plaintiff alleged under section 726.105(2), constitute "badges of fraud," giving rise to a presumption which shifts to the transferee the burden of explaining the transaction. *See Shear v. Seminara (In re PSI Indus., Inc.)*, 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003) ("Given the difficulties in establishing a transferor's actual intent, courts generally look at the totality of the circumstances and the

'badges of fraud' surrounding the transfers; while a single badge of fraud may create only a suspicious circumstance, several of them together may afford a basis to infer fraud. *Cuthill v. Greenmark, LLC* (*In re World Vision Entm't, Inc.*), 275 B.R. 641 (Bankr. M.D. Fla. 2002)."). Thus, it is indisputable that Plaintiff has properly alleged sufficient facts giving rise to a cause of action for fraudulent transfer under Florida law.

Despite such, Defendants WestLB and Indigo argue that Plaintiff cannot assert a claim for fraudulent transfer against them because "Florida does not recognize a cause of action for aiding and abetting a fraudulent transfer or conspiracy to commit a fraudulent transfer." In making this argument, the Defendants rely on *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272 (Fla. 2004) and *Chepstow Ltd. v. Hunt*, 381 F.3d 1077 (11th Cir. 2004). This Court, however, finds the Defendants' argument as well as their case law inapplicable to the case at hand.

In both *Freeman* and *Hunt*, it was held that "the Uniform Fraudulent Transfer Act (chapter 726, Florida Statutes) was not intended to serve as a vehicle by which a creditor may bring a suit against a *non-transferee* party for monetary damages arising from the *non-transferee* party's alleged aiding-abetting of a fraudulent money transfer." 865 So.2d at 1277 (emphasis added); *see also Hunt*, 381 F.3d at 1089. In the case at hand, however, WestLB and Indigo are both alleged to be active participants and transferees to the purported fraudulent transaction. *See* Compl. ¶¶ 4, 23, 24 & 25. Put another way, the allegations against WestLB and Indigo rise beyond the contention that they merely aided and abetted and "simply held the property as agents or conduits for one of the real parties to the transaction." *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F.Supp.2d 1326, 1344 (S.D. Fla. 2008) (citing *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1200 (11th Cir. 1988)). As such, this Court finds that Plaintiff

sufficiently and properly alleged a cause of action for fraudulent transfer against Defendants WestLB and Indigo. The *Motion to Dismiss* is denied as to both Defendants on this Count.

### Count II. Equitable Subordination

Under 11 U.S.C. § 510(c), "[p]roper exercise of the equitable subordination power can take place only where three elements are established: (1) The claimant must have engaged in some type of inequitable conduct, (2) The misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, (3) Subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." *In re Lemco Gypsum, Inc.*, 911 F.2d 1553, 1556 (11th Cir. 1990).

"In determining whether the first element is satisfied, the requisite inequitable conduct need not be related to the acquisition of the disputed claim as long as it is directed to the debtor or its creditors." *In re Beverages Int'l Ltd.*, 50 B.R. 273, 281 (Bankr. D. Mass. 1985). Although where the claimant is not an insider or fiduciary of the debtor, egregious conduct must be proven with particularity, "the power of equitable subordination may be used to subordinate even the claim of a secured creditor." *Chira v. Salkin (In re Chira)*, 378 B.R. 698, 712 (Bankr. S.D. Fla. 2007) (citing *In re Tri- O-Clean, Inc.*, 230 B.R. 192, 199 (Bankr. S.D. Fla. 1998) (secured claim of affiliate of management company for debtor reduced to unsecured status)).

In the case at hand, Plaintiff has alleged, in pertinent part:

> At the time of the Commitment Letter and as of the funding of the loan, and at all times in between, the Builder Defendants knew that: (a) A construction loan was needed to complete the project; (b) No construction loan would ever be sufficient to, both, fund the construction and pay off a Four Million Two Hundred Forty Seven Thousand One hundred Fifty and 00/100 Dollar ($4,247,150.00) loan made to acquire the property when the property was being purchased for Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) or roughly half the debt which encumbered it; (c) That the loan being made by the Builder Defendants had to be either subordinated or satisfied for the project to proceed.
> At the time of the Commitment Letter and at the time of funding the loan,

>the Builder Defendants had a present intent not to subordinate or otherwise cooperate in any reasonable way to permit the project to proceed.

Compl. ¶¶ 14 & 15.

>Further, as to Defendants WestLB and Indigo, Plaintiff alleged:

>>Prior to the date when the subject loan was closed, WestLB had entered into a loan and collateral agreement with BFWest and other Builder entities (the "WestLB Loan"). Pursuant to said agreement, WestLB became an active participant in the subject loan. *It provided the funds to the Builder Defendants that allowed the Builder Defendants to engage in the acts set forth herein* . . . .
>>Moreover, at all times material hereto, *WestLB was fully aware that the Builder Defendants were taking back promissory notes for far greater amounts than they were lending.* . . .
>>On or about January 31, 2006, eleven (11) days following the closing of the subject loan, WestLB entered into another and/or an amended loan arrangement with Builder Funding and BFWest. *WestLB received an assignment of the subject loan as partial security for an additional loan it made to BFWest. WestLB made this additional loan for the sole purpose of enabling the Builder Defendants to pay interest on the initial WestLB loan and to thereby continue to mask a rapidly growing problem WestLB now understood to exist.*
>>WestLB obtained an absolute and unconditional assignment of the mortgage and loan documents pursuant to an Agreed Order of the Bankruptcy Court in Case Number 08-13528-BKC-RBR on or about April 29, 2008.
>>[Indigo] obtained an assignment of the mortgage, promissory note and loan documents from WestLB.

Compl. ¶¶ 19, 21, 23, 24 & 4 (emphasis added).

Based on a factual scenario, strikingly similar to the one presented above, the Bankruptcy Court for the Eastern District of Pennsylvania found that a Trustee's complaint sufficiently pleaded a claim for equitable subordination against a non-insider creditor bank. *Lichtenstein v. MBNA Am. Bank, N.A.* (*In re Computer Personalities Sys., Inc.*), 284 B.R. 415 (Bankr. E.D. Pa. 2002). In *Lichtenstein*, the Trustee asserted that "despite [the non-insider creditor Bank's] knowledge that [Debtor, formerly engaged in the business of retail computer sales,] was not financially able to deliver computers ordered from it, [Bank] continued to extend loans to 'unwitting consumers' and used its leverage against [Debtor] to insist on procedures which

enabled [Bank] to substantially reduce its losses at the expense of such consumers and which exacerbated [Debtor's] financial condition." *Lichtenstein v. MBNA Am. Bank, N.A.* (*In re Computer Personalities Sys., Inc.*), 284 B.R. 415, 429 (Bankr. E.D. Pa. 2002). The court found that such allegations were "sufficient, given the standard applicable to motions to dismiss (i.e., the allegations must be viewed in favor of the non-moving party and the claim should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief), to state a claim for inequitable subordination." *Id.* Thus, it follows that WestLB, which, according to the *Second Amended Complaint*, knowingly enabled the Builder Defendants to engage in inequitable transactions with Plaintiff to serve its own financial interest, should not be allowed to seek dismissal of a claim for equitable subordination.

As to the second element that the alleged misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, courts have found that "[t]he type of harm to creditors sufficient for equitable subordination is difficult to define, and depends on the particular facts of the case. Generally, harm would consist of the loss of a right that impacts on the results of the bankruptcy distribution. The misconduct may result in harm to the entire creditor body, a particular class of creditors, to a few or just one creditor." *In re Beverages Int'l Ltd.*, 50 B.R. 273, 283 (Bankr. D. Mass. 1985) (citation omitted). Further, "[t]he identity of creditors harmed by the alleged misconduct and damages sustained by each is not necessary for application of equitable subordination." *Id.* Thus, "[i]n examining the effect of the conduct on creditors, the court should consider the effect of the then-known creditors, as well as future creditors." *Id.*

In this case, pointing to the purportedly fraudulent and usurious loan transactions conducted by the Defendants, Plaintiff pleaded that "[f]or instance, had the value of the Note and

the Mortgage not been grossly inflated by the Defendants, Plaintiff would have greater value to return to [other] creditors." Compl. ¶ 45. Assuming the veracity of Plaintiff's factual allegations and drawing reasonable inferences in Plaintiff's favor, this Court finds it plausible that Defendants WestLB and Indigo engaged in inequitable conduct, which resulted in injury to Plaintiff's other creditors or conferred an unfair advantage on the Defendants. Thus, WestLB and Indigo's *Motion to Dismiss* is denied on this Count. Plaintiff's *Second Amended Complaint* sufficiently and properly stated a cause of action for equitable subordination against both Defendants.

### Count III. Usury

In order to state a claim for usury under Fla. Stat. § 687 *et seq.*, the plaintiff must allege four elements: "(1) a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) payment or *agreement to pay* a greater rate of interest than is allowed by law; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned." *Villiappan v. Cruz*, 917 So.2d 257, 260 (Fla. 4th DCA 2005) (emphasis added). In their *Motion*, WestLB and Indigo concede that Plaintiff has alleged facts supporting the first two elements; thus, before this Court is the issue whether Plaintiff has properly alleged the third and fourth elements.

Most recent Florida case law establishes that "[s]ince the purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender, for purposes of usury calculations, courts will look beyond the form of a transaction to its substance." *Rollins v. Odom*, 519 So.2d 652, 657 (Fla. 1st DCA 1988) (citations omitted); *see also, e.g., In re Omni Capital Group, Ltd.*, 157 B.R. 712, 717 (Bankr. S.D. Fla. 1993) ("In determining whether a particular loan is usurious, the court must look beyond the terms of the documents themselves

and consider the entire substance of the transaction."); *Oregrund Limited P'ship v. Sheive*, 873 So.2d 451, 457 (Fla. 5th DCA 2004) ("Courts look to the substance of the transaction to determine whether a transaction is usurious."); *Rebman v. Flagship First Nat'l Bank of Highlands County*, 472 So.2d 1360, 1363 (Fla. 2d DCA 1985) ("A court should seek substance over form when it analyzes the amount of 'actual principal sum received' for purposes of usury calculations."). "Accordingly, any amounts advanced by a lender which directly or indirectly benefit the borrower—as well as any amounts directly received by a borrower—should be a part of the principal used for calculating interest under [Florida] usury law." 472 So.2d at 1363.

Further, "a finding of usury depends on the intent and understanding of the parties." 873 So.2d at 457. And "[g]enerally, the question of intent is one of fact," unless "there is no conflict in material facts." 472 So.2d at 1364; *see also* 873 So.2d at 455. "The lender's corrupt and willful intent to charge a usurious interest rate is determined by a consideration of all the circumstances surrounding the transaction." 519 So.2d at 658; *see also River Hills, Inc. v. Edwards*, 190 So.2d 415, 424 (Fla. 1966) ("The requisite corrupt or purposeful intent, however, is satisfactorily proved if the evidence establishes that the *charging or receiving of excessive interest was done with the knowledge of the lender*.").

Here, Plaintiff sufficiently pleaded that based on the understanding between the parties and considering the circumstances surrounding the transaction, the Promissory Note constitutes an agreement to pay a greater rate of interest than is allowed by law and such charging or receiving of excessive interest was done knowingly by or with the knowledge of the Defendants. Any material factual dispute by the Defendants as to the parties' understanding or intent regarding the transaction should be resolved by a trier of fact, not on a motion to dismiss. Also, in order for this Court to fully consider the substance of the transaction, not merely its form, and

determine the "amounts advanced by [the Defendants] which directly or indirectly benefit[ted] [the Plaintiff] as well as any amounts directly received by [the Plaintiff]," this Court cannot settle this claim on a motion to dismiss. As such, WestLB and Indigo's *Motion to Dismiss* is denied on this Count.

    **ORDERED** as follows:

    1.    *Motion to Dismiss* is denied on all Counts and as to both Defendants WestLB and Indigo.

###

Submitted by:

Arthur Halsey Rice, Esq.
Rice Pugatch Robinson & Schiller, P.A.
101 Northeast Third Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Phone: (954) 462-8000
Fax: (954) 462-4300

Attorney Rice shall mail a copy of this Order to all interested parties immediately upon receipt and shall file a Certificate of Service with the Court.