ORDERED in the Southern District of Florida on April 2, 2010



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 08-22814-BKC-AJC |
| 8699 BISCAYNE, LLC, | Chapter 11 |
|     Debtor. | |

_____/

| | |
|---|---|
| 8699 BISCAYNE, LLC, Debtor-in-Possession, | Adversary No. 08-01749-AJC |
|     Plaintiff, | |

v.

INDIGO REAL ESTATE, LLC, as assignee of
WESTLB AG & WESTLB AG, a Foreign Corporation;
BUILDERFINANCIAL CORP., a Florida corporation;
BUILDER FUNDING, LLC, a Delaware limited liability
Company; BFSPE, LLC, a Delaware limited liability
Company; and BFWEST, LLC, a Delaware limited liability
company,

    Defendants.

_____/

## MEMORANDUM DECISION DENYING DEFENDANTS BFWEST, LLC, BFSPE, LLC, BUILDER FUNDING, LLC, AND BUILDERFINANCIAL CORP.'S MOTION TO DISMISS DEBTOR'S SECOND AMENDED COMPLAINT

THIS MATTER came before the Court on November 5, 2009 at 10:30 a.m. for a hearing on *Defendants BFWest, LLC, BFSPE, LLC, Builder Funding, LLC, and BuilderFinancial, Corp.'s Motion to Dismiss Debtor's Second Amended Complaint* [D.E. # 149] (the "*Motion to Dismiss*"). Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rules of Civil Procedure 12(b)(6), Defendants BFWest, LLC, BFSPE, LLC, Builder Funding, LLC, and BuilderFinancial, Corp. (collectively, the "Builder Defendants") raised various grounds for dismissal of Debtor 8699 Biscayne, LLC's *Second Amended Complaint to Determine the Extent, Validity and Priority of Lien; Equitable Subordination; Fraudulent Transfer and Related Relief* [D.E. # 132, Ex. 3] (the "*Second Amended Complaint*").

### Standard for Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 1950. In evaluating the sufficiency of a plaintiff's pleadings, the

2

court should "make reasonable inferences in plaintiff's favor," though it is "not required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)) (quotation omitted). And "[i]t is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render the element plausible." *Rivell v. Private Healthcare Sys.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

In the case at hand, the Debtor's *Second Amended Complaint* alleges three Counts against the Builder Defendants: Count I. Fraudulent Transfer; Count II. Equitable Subordination; and Count III. Usury. [D.E. # 132, Ex. 3]. The Builder Defendants seek to dismiss only the Equitable Subordination and Usury Counts and have conceded the sufficiency of the allegations in the Fraudulent Transfer Count. Accordingly, upon the Builder Defendants' *Motion to Dismiss*, this Court finds that Debtor has properly stated a cause of action for Equitable Subordination and Usury and denies the *Motion to Dismiss*.

## Allegations against Defendant BFSPE, LLC

Defendant BFSPE argues that Debtor's *Second Amended Complaint* should be dismissed on all counts as to BFSPE because it was not a party to the Loan Documents attached to the *Second Amended Complaint*. The Court finds this argument disingenuous.

Exhibit "1" to the *Second Amended Complaint* is the Commitment Letter in which BFSPE is identified, along with Defendant Builder Funding, LLC, as a subsidiary of Defendant BuilderFinancial, Corp. This Letter states, in the first sentence, that "BuilderFinancial, Corp., a Florida corporation and *its subsidiaries* (hereinafter *collectively referred to as the* "*Mezzanine Lender*") have approved [Debtor's] request for the referenced loan facility . . . ." Then, the Letter provides: "[Debtor] shall pay to the *Mezzanine Lender* a pre-payment fee equal to the amount of

3

the undrawn Interest Reserve" (¶3); "*Mezzanine Lender* shall withhold an interest reserve in the amount of $630,000 to help cover the amount of interest that may due [sic] over the term of the Loan" (¶6); "The *Mezzanine Lender* shall take a FIRST MORTGAGE on each property being financed under the Loan" (¶7); "*Mezzanine Lender* agrees to subordinate its Loan to a construction/development loan . . ." (¶8); and so on. Moreover, the Loan Agreement and the Mortgage, Exhibits "2" and "3" to the *Second Amended Complaint*, incorporate the Commitment Letter by reference and include the Letter in the definition of Loan Documents. Thus, it is simply untrue, as BFSPE argues, that "[Debtor's] exhibits contradict any allegation that BFSPE, LLC was involved with this financial transaction." The *Motion to Dismiss* is denied on this point.

### Count II. Equitable Subordination

Under 11 U.S.C. § 510(c), "[p]roper exercise of the equitable subordination power can take place only where three elements are established: (1) The claimant must have engaged in some type of inequitable conduct, (2) The misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, (3) Subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." *In re Lemco Gypsum, Inc.*, 911 F.2d 1553, 1556 (11th Cir. 1990).

"In determining whether the first element is satisfied, the requisite inequitable conduct need not be related to the acquisition of the disputed claim as long as it is directed to the debtor or its creditors." *In re Beverages Int'l Ltd.*, 50 B.R. 273, 281 (Bankr. D. Mass. 1985). Although where the claimant is not an insider or fiduciary of the debtor, egregious conduct must be proven with particularity, "the power of equitable subordination may be used to subordinate even the claim of a secured creditor." *Chira v. Salkin* (*In re Chira*), 378 B.R. 698, 712 (Bankr. S.D. Fla. 2007) (citing *In re Tri- O-Clean, Inc.*, 230 B.R. 192, 199 (Bankr. S.D. Fla. 1998) (secured claim

of affiliate of management company for debtor reduced to unsecured status)).

As to the second element that the alleged misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, courts have found that "[t]he type of harm to creditors sufficient for equitable subordination is difficult to define, and depends on the particular facts of the case. Generally, harm would consist of the loss of a right that impacts on the results of the bankruptcy distribution. The misconduct may result in harm to the entire creditor body, a particular class of creditors, to a few or just one creditor." *In re Beverages Int'l Ltd.*, 50 B.R. 273, 283 (Bankr. D. Mass. 1985) (citation omitted). Further, "[t]he identity of creditors harmed by the alleged misconduct and damages sustained by each is not necessary for application of equitable subordination." *Id.* Thus, "[i]n examining the effect of the conduct on creditors, the court should consider the effect of the then-known creditors, as well as future creditors." *Id.*

In the case at hand, Plaintiff has alleged, in pertinent part:

> At the time of the Commitment Letter and as of the funding of the loan, and at all times in between, the Builder Defendants knew that: (a) A construction loan was needed to complete the project; (b) No construction loan would ever be sufficient to, both, fund the construction and pay off a Four Million Two Hundred Forty Seven Thousand One hundred Fifty and 00/100 Dollar ($4,247,150.00) loan made to acquire the property when the property was being purchased for Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) or roughly half the debt which encumbered it; (c) That the loan being made by the Builder Defendants had to be either subordinated or satisfied for the project to proceed.
> At the time of the Commitment Letter and at the time of funding the loan, the Builder Defendants had a present intent not to subordinate or otherwise cooperate in any reasonable way to permit the project to proceed.
> It was the intention of the Plaintiff and BuilderFinancial, BFSPE and Builder Funding when the loan was made that the loan would be subordinated to a construction loan obtained by the parties. The construction loan was to be used to construct the project that was expected to produce the profits that would be used to satisfy the loan.
> In reliance upon the representations that Builder Funding would subordinate its loan to a construction loan, Plaintiff entered into the transaction and funded a deposit for the purchase of the real property in the amount of Two

Hundred Fifty Thousand and 00/100 Dollars ($250,000.00).

BuilderFinancial, BFSPE and Builder Funding never intended to subordinate the loan to a construction loan. The representations that they made were false and known by them to be false when they were made.

The representations were made with the intent to defraud the Plaintiff from its investment of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) and other related project costs funded by the Plaintiff.

The Plaintiff secured a construction loan commitment. The terms of the construction loan were accepted by the Builder Defendants.

The Plaintiff relied on the acceptance by BuilderFinancial, Builder Funding and subsequently, assignees WestLB and BFWest, of the terms of the construction loan commitment and funded expenses associated with developing the real property.

When the Builder Defendants refused to subordinate the loan pursuant to the terms that they had agreed to, Plaintiff became unable to close the construction loan.

Compl. ¶¶ 14, 15, 28–34.

Assuming the veracity of above facts alleged in the *Second Amended Complaint* and making reasonable inferences in favor of the Debtor, the Court finds it sufficiently plausible that the Builder Defendants engaged in inequitable conduct that resulted in injury to Debtor's other creditors or conferred an unfair advantage to the Builder Defendants. As such, the Builder Defendants' *Motion to Dismiss* is denied as to the Equitable Subordination Count.

## Count III. Usury

In order to state a claim for usury under Fla. Stat. § 687 *et seq.*, the plaintiff must allege four elements: "(1) a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) payment or *agreement to pay* a greater rate of interest than is allowed by law; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned." *Villiappan v. Cruz*, 917 So.2d 257, 260 (Fla. 4th DCA 2005) (emphasis added). In their *Motion*, WestLB and Indigo concede that Plaintiff has alleged facts supporting the first two elements; thus, before this Court is the issue whether Plaintiff has properly alleged the third and fourth elements.

6

Most recent Florida case law establishes that "[s]ince the purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender, for purposes of usury calculations, courts will look beyond the form of a transaction to its substance." *Rollins v. Odom*, 519 So.2d 652, 657 (Fla. 1st DCA 1988) (citations omitted); *see also, e.g.*, *In re Omni Capital Group, Ltd.*, 157 B.R. 712, 717 (Bankr. S.D. Fla. 1993) ("In determining whether a particular loan is usurious, the court must look beyond the terms of the documents themselves and consider the entire substance of the transaction."); *Oregrund Limited P'ship v. Sheive*, 873 So.2d 451, 457 (Fla. 5th DCA 2004) ("Courts look to the substance of the transaction to determine whether a transaction is usurious."); *Rebman v. Flagship First Nat'l Bank of Highlands County*, 472 So.2d 1360, 1363 (Fla. 2d DCA 1985) ("A court should seek substance over form when it analyzes the amount of 'actual principal sum received' for purposes of usury calculations."). "Accordingly, any amounts advanced by a lender which directly or indirectly benefit the borrower—as well as any amounts directly received by a borrower—should be a part of the principal used for calculating interest under [Florida] usury law." 472 So.2d at 1363.

Further, "a finding of usury depends on the intent and understanding of the parties." 873 So.2d at 457. And "[g]enerally, the question of intent is one of fact," unless "there is no conflict in material facts." 472 So.2d at 1364; *see also* 873 So.2d at 455. "The lender's corrupt and willful intent to charge a usurious interest rate is determined by a consideration of all the circumstances surrounding the transaction." 519 So.2d at 658; *see also River Hills, Inc. v. Edwards*, 190 So.2d 415, 424 (Fla. 1966) ("The requisite corrupt or purposeful intent, however, is satisfactorily proved if the evidence establishes that the *charging or receiving of excessive interest was done with the knowledge of the lender*.").

Here, Debtor sufficiently pleaded that based on the understanding between the parties and

7

considering the circumstances surrounding the transaction, the Promissory Note constitutes an agreement to pay a greater rate of interest than is allowed by law and such charging or receiving of excessive interest was done knowingly by or with the knowledge of the Builder Defendants. Any material factual dispute by the Builder Defendants as to the parties' understanding or intent regarding the transaction should be resolved by a trier of fact, not on a motion to dismiss. Also, in order for this Court to fully consider the substance of the transaction, not merely its form, and determine the "amounts advanced by [the Builder Defendants] which directly or indirectly benefit[ted] [Debtor] as well as any amounts directly received by [Debtor]," this Court cannot settle this claim on a motion to dismiss. As such, the Builder Defendants' *Motion to Dismiss* is denied as to this Count.

     **ORDERED** as follows:

1.    *Motion to Dismiss* is denied on all Counts and as to all Defendants.

# # #

Submitted by:

Arthur Halsey Rice, Esq.
Rice Pugatch Robinson & Schiller, P.A.
101 Northeast Third Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Phone: (954) 462-8000
Fax: (954) 462-4300

Attorney Rice shall mail a copy of this Order to all interested parties immediately upon receipt and shall file a Certificate of Service with the Court.