

**ORDERED in the Southern District of Florida on September 06, 2011.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re: | Case No. 08-22814-BKC-AJC |
| 8699 BISCAYNE, LLC | Chapter 11 |
| Debtor. | |
| _____/ | |
| 8699 BISCAYNE, LLC, Debtor in Possession | Adv. No. 08-1749-BKC-AJC-A |
| Plaintiff, | |
| vs. | |
| INDIGO REAL ESTATE, LLC, as assignee of WESTLB AG, & WESTLB AG, a Foreign Corporation BUILDERFINANCIAL, CORP., a Florida corporation BUILDER FUNDING, LLC, a Delaware limited liability company, BFSPE, LLC a Delaware limited liability company, BFWEST, LLC, a Delaware limited liability company, | |
| Defendants. | |
| _____/ | |

**MEMORANDUM ORDER GRANTING DEFENDANTS', BFWEST, LLC, BFSPE, LLC, BUILDER FUNDING, LLC AND BUILDERFINANCIAL CORP.'S MOTION FOR SUMMARY FINAL JUDGMENT ON USURY ISSUES AND DENYING PLAINTIFF, 8699 BISCAYNE, LLC'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPLEMENTAL MOTION FOR FINAL SUMMARY JUDGMENT ON COUNT III USURY**

THIS CAUSE came before the Court for hearing on June 20, 2011 upon Defendants', BFWEST, LLC, BFSPE, LLC, BUILDER FUNDING, LLC, and BUILDERFINANCIAL CORP.'s (collectively, the "Defendants") Motion for Summary Final Judgment on Usury Issues ("Defendants' Motion") [D.E. 289]. Additionally, Plaintiff, 8699 BISCAYNE, LLC ("Plaintiff" or "8699 BISCAYNE") previously filed its Cross-Motion for Partial Summary Judgment (Plaintiff's "Cross-Motion") [D.E. 72] and Supplemental Motion for Final Summary Judgment on Count III Usury (Plaintiff's "Supplemental Motion") [D.E. 291] for which the Court accepted argument during the June 20, 2011 hearing. The Court, after having reviewed Defendants' Motion as well as Plaintiff's Cross-Motion and Supplemental Motion, the record and file in this case, and otherwise being fully familiar in the circumstances makes the following finding and conclusions, and enters the following relief set forth herein as to Defendants' Motion, Plaintiff's Cross-Motion and Supplemental Motion for the reasons set forth herein.

## I.     PROCEDURAL HISTORY

1.     Following the filing of an Amended Complaint dated February 11, 2009 seeking declaratory relief in conjunction with allegations of usury relating to a certain promissory note, mortgage and other loan documents as executed between Plaintiff and Defendants, on April 2, 2009, Plaintiff filed its Response to Defendants, WESTLB AG and INDIGO REAL ESTATE, LLC's (collectively, "WESTLB Defendants") Motion to Dismiss Debtor's Amended Complaint and Cross-Motion for Partial Summary Judgment [D.E. 72].

2.     On August 31, 2009, Plaintiff submitted and this Court subsequently granted its motion seeking leave to file a Second Amended Complaint alleging causes of action for usury relating to that certain promissory note, mortgage and other loan documents attached to its Amended Complaint ("Motion to File Second Amended Complaint") [D.E. 132, 140].

3.      Upon this Court's approval of the settlement between the Plaintiff and INDIGO REAL ESTATE, LLC, as assignee of WESTLB AG and WESTLB AG [D.E. 250], Plaintiff's alleged usury claims against the Defendants which were set forth under Count III of the Second Amended Complaint became the sole remaining issues in this adversary action.

4.      On April 29, 2011, Defendants filed their Motion for Summary Final Judgment on Usury Issues and Supporting Memorandum of Law moving the Court pursuant to Federal Rule of Civil Procedure 56 for an order granting summary judgment in favor of the Defendants on the grounds that there is no genuine issue as to any material fact that the loan referenced under Plaintiff's Second Amended Complaint violated criminal usury laws [D.E. 289].

5.      Plaintiff subsequently filed its Supplemental Motion for Summary Final Judgment on Count III Usury and Response in Opposition to Defendants' Motion For Summary Final Judgment on Usury Issues and Memorandum of Law [D.E. 290 and 291]. On June 20, 2011, Defendants filed their Response to Plaintiff's Supplemental Motion for Final Summary Judgment on Count III Usury [D.E. 306]. The Court heard oral argument on the above-referenced motions on June 20, 2011.

## II. **FINDINGS OF FACT**

6.      On or about January 12, 2006, Jason Vance, Tamara Vance, and Michael Scaglione, on behalf of themselves and an entity to later be formed (which became 8699 BISCAYNE), originally requested from BUILDERFINANCIAL CORP. a loan for the acquisition and development of certain real property in Miami-Dade County. As a result of such request, the parties negotiated and agreed to the terms set forth in a Commitment Letter, dated January 12, 2006, that established the terms of the contemplated loan and expressed the agreed conditions

under which BUILDERFINANCIAL CORP. would make the contemplated loan to 8699 BISCAYNE (the "Commitment Letter") [D.E. 132, Exh. 3, Exh. 1].

7. Among other items, the Commitment Letter provided for the issuance of a loan to the Plaintiff by BUILDERFINANCIAL CORP., through its affiliated entity, BUILDER FUNDING, LLC, and dictated that the maximum collective amount of the loan advances thereunder would total $4,247,150.00 over a term of twenty-seven (27) months with a stated interest rate of eight percent (8%) per annum [D.E. 132, Exh. 3, Exh. 1].

8. On or about January 20, 2006, consistent with the provisions of the Commitment Letter, and consistent with the earlier request of Jason Vance, Tamara Vance, and Michael Scaglione on behalf of 8699 BISCAYNE, BUILDERFINANCIAL CORP., through its affiliated entity, BUILDER FUNDING, LLC, entered into a loan agreement which provided that a loan would be made to 8699 BISCAYNE in the original principal sum of $4,247,150.00 (the "Loan") [D.E. 132, Exh. 3, Exh. 2]. The Loan was evidenced by that certain Promissory Note dated as of January 20, 2006, executed by Jason Vance and Michael Scaglione as managers of 8699 BISCAYNE and made payable to BUILDER FUNDING, LLC, in the original principal amount of $4,247,150.00 (the "Note") [D.E. 132, Exh. 3, Exh. 4].

9. The Loan Closing Statement, dated January 20, 2006, reflected the following loan expenses being owed by Plaintiff for the Loan:

- Commitment Fee[1]         = $5,000.00
- Discount Points[2]        = $613,400.00
- Facility Fee[3]           = $53,750.00
- Origination Fee[3]        = $700,000.00

---

1 Paid outside of closing to BUILDER FUNDING, LLC
2 Paid to BUILDER FUNDING, LLC
3 Paid to BUILDERFINANCIAL CORP.

4

- Lot Inspection Fee[3]             = $100.00
- Construction Administration Fee[3]  = $500.00
- Underwriting Fee[3]             = $500.00
- Project Fee[3]                  = $500.00

**Total Fees**                   =**$1,373,750.00**

[D.E. 132, Exh. 3, Exh. 3].

10. In addition, an interest reserve of $630,000.00 ("Interest Reserve") was created under the Loan by having such funds reserved from the principal Loan amount [D.E. 132, Exh. 3, Exh. 3]. Pursuant to the terms of the Loan, 8699 BISCAYNE was under no obligation to use the funds allocated to the Interest Reserve for the payment of monthly interest on those Loan amounts actually advanced to or on behalf of Plaintiff [D.E. 132, Exh. 3, Exh. 2 and 4].

11. As evidenced by the BUILDERFINANCIAL CORP. Disbursement Log, 8699 BISCAYNE received, on its behalf, $3,617,150.00 of the maximum $4,247,150.00 under the Loan (the "Loan Disbursement Log) [D.E. 307, Page 1]. These sums were also reflected as being disbursed for the benefit of Plaintiff under the Loan Closing Statement, as acknowledged by Plaintiff.

12. The remaining $630,000.00 Interest Reserve under the Loan, was allocated for the sole benefit of Plaintiff for use toward the payment of monthly interest on the initial disbursement of $3,617,150.00, and any such later disbursements made under the Loan [D.E. 307, Page 1].

---

[3] Paid to BUILDERFINANCIAL CORP.

13.    The Note required Plaintiff to make monthly interest payments, with interest payable at a rate of eight percent (8%) per annum [D.E. 132, Exh. 3, Exh. 4]. As evidenced by the Loan Disbursement Log, Plaintiff was obligated to make these monthly interest payments which commenced in January 2006 on the initial disbursement of $3,617,150.00 [D.E. 307, Page 3]. The interest calculation at the time of the initial disbursement of the Loan for January 2006 is as follows:

$$\frac{(\text{Amount Funded} * \text{Interest Rate})}{\text{Calendar Days}} = \text{Per Diem} * \text{Number of Days in Billing Cycle} = \text{Interest}$$

$$\frac{(\$3{,}617{,}150.00 * 0.08)}{60_4} = \$803.81\ 11 * 11 = \mathbf{\$8{,}841.92}\ 3$$

14.    The January 2006 interest calculation of $8,841.92 was computed using the stated interest rate of eight percent (8%) per annum and based solely on the funds of the Loan which had been advanced and disbursed to or on behalf of Plaintiff, i.e., the $3,617,150.00 sum only.

15.    No interest was calculated or charged on the $630,000.00 Interest Reserve.

16.    The January 2006 interest payment was paid on behalf of Plaintiff with funds advanced from the $630,000.00 Interest Reserve [D.E. 307, Pages 1 and 3]. Subsequent monthly interest payments due under the Loan were calculated on the funded amount of the Loan which had been then-disbursed to or on behalf of Plaintiff, which included the initial disbursement of $3,617,150.00 and those funds periodically advanced from the Interest Reserve which were advanced to pay on-going monthly interest payments due on the Loan [D.E. 307, Pages 1 and 3].

17.    The interest on the Loan for February 2006 and the following months was calculated as follows:

---

[4] Defendants used the figure of 360 calendar days per year for purposes of computing interest on the Loan, as agreed to by the parties thereto.

**February 2006**

$$\frac{(\$3,625,991.92 * 0.08)}{360} = \$805.776 * 28 = \mathbf{\$22,561.73}$$

**March 2006**

$$\frac{(\$3,648,553.65 * 0.08)}{360} = \$810.7897 * 31 = \mathbf{\$25,134.48}$$

**April 2006**

$$\frac{(\$3,673,688.13 * 0.08)}{360} = \$816.3751 * 30 = \mathbf{\$24,491.24}$$

18.     As evident from the above interest calculations, the amount funded for the loan increased each month from those totals advanced from the prior months from the Interest Reserve for payment of the monthly interest. It was only after the funds from the Interest Reserve had been advanced for payment of the monthly interest that the eight percent (8%) stated rate of interest on the Loan was charged upon such sums.

19.     As of January 31, 2008, the entirety of the Interest Reserve had been disbursed to cover those monthly interest payments due under the Loan and the full $4,247,150.00 face amount of the Note had been advanced to Plaintiff [D.E. 307, Pages 1 and 3].

20.     The Plaintiff never paid any interest due under the Loan from its own funds; the only interest paid on this Loan came from the Interest Reserve.

### III. CONCLUSIONS OF LAW

21.     Under the Note, the parties agreed that its terms and provisions shall be construed and enforced in accordance with Florida law. In accordance with a choice of law provision, Florida law sets forth four (4) elements necessary to substantiate the usurious nature of a transaction. To establish usury, there must be: (1) a loan express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such a loan,

7

a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) there existed a corrupt intent to take more than the legal rate for the use of the money loaned. See *Video Trax, Inc. v. NationsBank, N.A.,* 33 F. Supp. 2d 1041, 1056 (S.D.Fla. 1998) citing *Dixon v. Sharp,* 276 So. 2d 817, 819 (Fla. 1973); See also *Pinchuck v. Canzoneri,* 920 So. 2d 713, 715 (Fla. 4th DCA 2006); *Jersey Palm-Gross, Inc. v. Paper,* 639 So. 2d 664, 666 (Fla. 4th DCA 1994).

22. In the instant case, the parties agree that the first two "essential elements"—the existence of a loan and a repayment requirement—are established under the undisputed facts of this matter and the loan documents present in the record. However, it is the third and fourth "essential elements" which the parties dispute to be present under the Loan at issue herein.

**A. Interest Reserve for Purposes of Usury Calculations**

23. During oral argument on June 20, 2011, the Court primarily focused upon whether to include or exclude the Interest Reserve as additional interest under the Loan, which is required to be "spread" over the term of the Loan pursuant to the usury formulas found in Florida Statute Section 687.03(3) and further enumerated by the Florida Supreme Court in *St. Petersburg Bank & Trust Co. v. Hamm,* 414 So. 2d 1071 (Fla. 1982).

24. Defendants have argued that the Interest Reserve should be excluded as additional interest for purposes of usury calculations, because such funds were retained by Defendants for the benefit and convenience of Plaintiff, at closing, to pay ongoing, accrued due interest on the Loan. Defendants contend that no interest was charged against the Interest Reserve at the inception of the Loan and that the only interest charged against the Interest Reserve monies came after such funds were periodically disbursed to pay the monthly interest payments due under the Loan, as contemplated by the parties.

25. Plaintiff contends that the $630,000.00 Interest Reserve, allocated at the Loan's inception, should be considered an advance or additional interest because such funds were advanced by Defendants at closing and had interest charged against such sums pursuant to the stated rate of interest contained in the Note. Plaintiff argues that the full amount of the Interest Reserve thus should be "spread" over the term of the Loan.

26. Based on the record and applicable law, this Court believes the Interest Reserve should not be treated as an advance or as additional interest, and, as such, should be excluded from any usury calculation herein.

27. The methodology for calculating interest in transactions exceeding $500,000.00 is described under the "spreading" provisions of Florida Statute Section 687.03(3), which provides a formula to compute the rate of interest in order to determine if a transaction is usurious and states in part:

> …any payment or property charged…as an advance…which is in the nature of, and taken into account in the calculation of, interest shall be valued as of date received and shall be spread over the stated term of the loan…for the purpose of determining the rate of interest. The spreading of any such advance…for the purpose of computing the rate of interest shall be calculated by first computing the advance…as a percentage of the total stated amount of such loan….This percentage shall then be divided by the number of years, and fractions thereof, of the loan…according to its stated maturity date, without regard to early maturity in the event of default. The resulting annual percentage rate shall then be added to the stated annual percentage of interest to produce the effective rate of interest for purposes of this chapter."

28. In *St. Petersburg Bank & Trust Co. v. Hamm,* 414 So.2d 1071 (Fla. 1982), the Florida Supreme Court addressed the above "spreading" statute in considering whether the payment by a borrower of a "loan charge" rendered a particular loan usurious under Florida law. In *Hamm,* the stated principal debt identified on a promissory note was $290,000.00, and the borrower also was required to pay a loan charge of $5,800.00. *Id.* at 1072. In calculating

interest under the spreading statute, the Supreme Court agreed with the trial court's analysis that interest only would be calculated against the face amount (the "stated amount") of the note which may not necessarily be the same as the "actual principal sum received". *Id.* at 1073-1074. Following Florida Statute Section 687.03, the Supreme Court first computed the advance as a percentage of the total stated amount of the loan, then divided that rate by the term of the loan in years, and then added that figure to the stated annual percentage rate on the loan to calculate the effective rate of interest for purposes of the spreading statute. *Id.* at 1072-1073.

29. The concept of an "interest reserve" is present when a lender virtually loans money to a borrower to pay the interest on a loan which allows a borrower to defer such interest payment by borrowing from the lender. *See Mid-State Federal Savings Bank v. Marketing and Management Associates, Inc.,* 570 So.2d 1016, 1017 (Fla. 5th DCA 1990). Monies from an interest reserve are usually advanced monthly as long as they are available to pay the interest that is due under the loan. As monies from the interest reserve are advanced, the loan outstanding increases under the facility, as such funds are advanced to pay interest for the benefit of the borrower, as its payment. The interest reserve is not kept in a separate escrow account, but rather a collective account of all interest reserves. Such long-standing concept of construction financing and related law is thoroughly discussed in *Practice Under Florida Usury Law,* section 4.33 and 4.34 at 114 through 116 (Florida Bar Continuing Legal Education Practice Manual, 1982) as cited by *Rebman v. Flagship First National Bank of Highlands County,* 472 So.2d 1360, 1363 (Fla. 2d DCA 1985).

30. In *Rebman v. Flagship First National Bank of Highlands County,* 472 So.2d 1360 (Fla. 2d DCA 1985), the borrower entered into a series of three (3) loans with the lender which involved the deposit of a portion of the loan proceeds into a non-interest bearing escrow account

with the deposited funds to be used solely to provide payment for the monthly principal and interest on the loans. *Rebman,* 472 So. 2d at 1361-62. In affirming the trial court's rejection of usury claims, the Second District Court of Appeals of Florida refused to "spread" the monies placed into the escrow account, but rather only applied the escrowed monies as part of the principal, or "stated amount of the loan", for calculating interest under the usury statutes because even though such escrowed monies never passed directly through the borrower's hands, such funds were used exclusively for the borrower's benefit for the payment of her monthly principal and interest obligation. *Id.* at 1363.

31.    As evident from the record herein, the Interest Reserve was not advanced to 8699 BISCAYNE at the Loan's inception. Rather, such funds were held aside by the Defendants for the benefit of 8699 BISCAYNE so it could pay the monthly interest payments to come due under the Loan [D.E. 307, Page 1]. These funds were correspondingly used on a periodic basis to pay Plaintiff's monthly interest obligation on the Loan.

32.    The record shows that the Defendants did not charge any interest upon any portion of the Interest Reserve until after such funds were partially disbursed to 8699 BISCAYNE to cover the monthly interest payments due under the terms of the Loan, and even then, only as to the disbursed amount [D.E. 307, Pages 1 and 3]. *See Mindlin v. Davis,* 74 So.2d 789, 793 (Fla. 1954) (the retention of a substantial portion of the loan with a corresponding abatement of interest on the amount retained will not result in such funds being termed interest for usury calculation purposes).

33.    Kyle Meyer, President of BUILDERFINANCIAL CORP., stated that the Interest Reserve was held as a bookkeeping entry against the Loan and was used to pay the interest on the outstanding loan balance as required by the monthly interest statements

[D.E. 304, Page 15 of 73, Page 46, Lines 11-19]. Mr. Meyer explained that the Interest Reserve only became a part of the funded Loan when such funds were disbursed on behalf of Plaintiff and applied to the monthly interest payments due on the Loan [D.E. 304, Page 14 of 73, Page 44, Lines 17-19]. Interest was charged only after funds were actually disbursed for the benefit of Plaintiff for the payment of monthly interest [D.E. 304, Page 48 of 73, Page 184, Lines 8-12].

34. Additionally, the Note, bearing Plaintiff's endorsement and execution, specifically provided for the retention of $630,000.00 by Defendants as an interest reserve from the proceeds of the Loan from which monthly interest payments on the Loan could be funded [D.E. 132, Exh. 3, Exh. 4]. *See Swanson v. Gulf West International Corporation,* 429 So.2d 817, 818-19 (Fla. 2d DCA 1983) (finding borrower failed to carry burden of proof to establish usury based in part by the promissory note signed by borrower agreeing to the withholding of interest from the proceeds of the loan to cover monthly interest payments).

35. Therefore, there are no genuine issues of material fact regarding whether the Interest Reserve, herein, referenced in the Commitment Letter, the Note and the Closing Statement should be included as additional interest at the Loan's inception for usury calculation purposes. The Court determines it should not be so included.

36. As dictated under the Supreme Court's *Hamm* decision and applicable usury statutes, the proper calculation of interest under the Loan is as follows:

| | |
|---|---|
| Total Amount of Advances | = $1,373,750.00[5] |
| Total Stated Amount of Loan | = **$3,617,150.00**[6] |

---

[5] This figure represents the summation of the Commitment Fee ($5,000.00), Discount Points ($613,400.00), Facility Fee ($53,750.00), Origination Fee ($700,000.00), Lot Inspection Fee ($100.00), Construction Administration Fee ($500.00), Underwriting Fee ($500.00), and Project Fee ($500.00). The Court considers these fees to be advances which count as additional interest under the terms of the Loan for the purpose of considering summary judgment, but does not rule as to the extent these fees actually constitute interest.

| | |
|---|---|
| Percentage of Advance | $= \dfrac{\$1{,}373{,}750.00}{\$3{,}617{,}150.00} = 37.98\%$ |
| Term of Loan | $= 2.281 \text{ years}^7$ |
| Annual Percentage of Advances | $= \dfrac{37.98\%}{2.281} = 16.65\%$ |
| Note Rate of Interest | $= 8\%$ |
| Effective Rate of Interest | $= 8\% + 16.65\% = \underline{24.65\%}$ |

37.     Based upon the foregoing, the Court finds the Loan between the parties is not usurious.

38.     8699 BISCAYNE has argued that recent Florida case law invalidates this analysis, but upon a review of same, such conclusion is misplaced. The cases cited by the Plaintiff— *Velletri v. Dixon,* 44 So.3d 187 (Fla. 2d DCA 2010) and *Morales v. Grassy Key Beach Subdivision, Inc.,* 50 So.3d 639 (Fla. 3d DCA 2010)—are inapplicable to instant matter.

39.     *Velletri v. Dixon* involved a loan transaction whereby the borrower obtained a loan with a face amount of $250,000.00 from the lender. *Velletri,* 44 So.3d at 188-89. After collecting an origination fee and interest from the loan proceeds at closing, the lender withheld an additional $65,000.00 from the face amount of the loan as *"construction loan funds",* which funds were placed in an escrow account from which the borrower could apply for

---

6 Although the Defendants rely on the *Hamm* decision to support their claim that the face amount of the Note is the figure to use for this analysis, the Court disagrees. Defendants cannot have their cake and eat it too! They cannot exclude the undisbursed amount for part of the calculation but include it for another part of the calculation where it benefits them.   The Court believes the more accurate amount to be included as the "stated amount" is the face amount of the Loan, $4,247,150.00, minus the Interest Reserve, $630,000.00, equaling $$3,617,150.00.
7 Defendants used a figure of 360 calendar days per year for purposes of computing interest on the Loan but even considering a calendar year consisting of 365 days, the calculation produced an effective interest rate of 24.88%.

reimbursement. *Id.* From the loan's inception, the lender calculated and charged interest on the <u>full face amount</u> of the loan, including the "construction loan funds". *Id.* In its decision, the Second District Court of Appeals noted that "where a lender retains a substantial portion of the loan proceeds without allowing a corresponding abatement of interest on the amount retained, that retention effectively increases the interest charged on the amounts actually advanced to the borrower, which can render an otherwise proper loan usurious." *Id.* at 190. In prescribing to the usury calculation provisions set forth in the *Hamm* decision, the appellate court declared the "construction loan funds" to be additional interest and found the loan to be usurious. *Id.* at 191-92.

40. Plaintiff's reliance upon *Velletri* is misplaced as such case involved the retention of "construction loan funds" whose purpose was to reimburse the borrower for renovations on the construction project as costs progressed. The instant matter involves the retention of monies in an interest reserve held for the benefit of Plaintiff to pay the monthly interest payments on the Loan as such interest became due—not to "reimburse" the Plaintiff.

41. Moreover, while Defendants reserved the Interest Reserve amounts at closing, Defendants did <u>not charge interest on the Interest Reserve monies</u> until such funds were advanced for the payment of monthly interest on the Loan. *See Williamson v. Clark,* 120 So. 2d 637 (Fla. 2d DCA 1960).

42. The other case relied upon by the Plaintiff, *Morales v. Grassy Key Beach Subdivision, Inc.,* 50 So.3d 639 (Fla. 3d DCA 2010), involved a loan transaction containing a pre-paid interest provision whereby the first nine (9) months of interest on the loan would be paid in advance by the borrower at the inception of the loan. The borrower in *Morales* was <u>obligated to pay interest upon the pre-paid interest from the inception of the loan</u> because such funds were paid to the full benefit of the borrower at closing [D.E. 294, Page 26]. The appellate court affirmed the trial

court's order finding the pre-paid interest to constitute an advance subject to spreading under the usury statutes, and pursuant to the *Hamm* decision, the loan was criminally usurious. *Morales,* 50 So.3d at 639.

43.     The *Morales* decision involved a loan transaction containing a provision for the pre-paid of interest which was <u>advanced to the full benefit of the borrower at closing,</u> which is dissimilar from the instant action where an interest reserve was retained by Defendants, until disbursed for the payment of monthly interest charges on the Loan. Additionally, interest was calculated on the pre-paid interest in *Morales* from the loan's inception because such funds had been considered to be <u>fully advanced</u> to the borrower for its benefit whereas no interest was calculated on the interest reserve in the instant matter, until such funds were disbursed to the benefit of Plaintiff on a monthly basis to cover the required interest payments.

44.     This Court concludes that the Interest Reserve found in the present Loan between Plaintiff and Defendants should not be considered as additional interest for purposes of usury calculations under the usury spreading statute.  Likewise, the Interest Reserve will not be considered part of the equation for calculating the stated amount of the Loan.

**B. Pre-Payment Penalty Clause And Impact on Determination of Usury Issues at Loan Inception**

45.     8699 BISCAYNE has alleged that the Note contained a provision whereby Plaintiff would incur a pre-payment penalty equal to the amount of any remaining funds left in the Interest Reserve at the time of such payment prior to maturity. Plaintiff contends that this contract provision serves to define the full amount of the Interest Reserve as additional interest, which should then be spread over the term of the Loan pursuant to the usury spreading statutes and the *Hamm* decision.

46.     The "pre-payment penalty clause" found in the Note specifically reads as follows:

> "In the event the Note is prepaid in full prior to the Maturity Date, Maker shall pay Holder a prepayment fee in an amount equal to the amount of the undrawn Interest Reserve, if any, at the time of prepayment"

[D.E. 132, Exh. 3, Exh. 4, Page 71].

47. Plaintiff's characterization of the "pre-payment penalty clause" does not persuade this Court that the Loan is otherwise usurious. "[T]he usurious nature of a transaction is determined at the inception of the transaction". *Oregrund Limited Partnership v. Sheive,* 873 So.2d 451, 458-59 (Fla. 5th DCA 2004); *Rollins v. Odom,* 519 So.2d 652, 658 (Fla. 1st DCA 1988); *Home Credit Co. v. Brown,* 148 So.2d 257, 259 (Fla. 1963).

48. The Court has determined that the Loan was not otherwise usurious at its inception based on the Court's decision to exclude the Interest Reserve as additional interest from being spread under such usury calculations, ***and even excluding the Interest Reserve from the stated amount of the Loan***. In analyzing Plaintiff's claim that the pre-payment contract provision of the Note (which could only occur <u>after</u> the Loan's inception) may make an otherwise non-usurious loan usurious, the Court concludes it cannot.

49. In *Dezell v. King,* 91 So.2d 624 (Fla. 1957), the Florida Supreme Court reviewed a lower court ruling granting summary final judgment in favor of the lender in relation to a two (2) count complaint alleging usury by the borrower. The borrower pursued the theory that the promissory note between the parties was not usurious at its inception, but rather was rendered usurious by the payments made thereon and the exercise of the option of the borrower to pay the note in full before maturity, at which time the lender demanded and received the full unaccrued interest. *Id.* at 627.

50. The Florida Supreme Court held that "[t]he law seems to be well settled that where the contract is not usurious at its inception it is not rendered usurious because of exercise of the

16

option of prepayment by the maker and the demand and receipt of interest by payee for the full length of the contract". *Id.* Volume 55 of American Jurisprudence states that, if a loan transaction would be free from usury if the loan were paid at the agreed maturity, it is not rendered usurious by its voluntary repayment by the borrower before maturity, even though, by reason of such payment, the amount of interest received by the lender exceeds the lawful interest computed to the date when the loan was paid. A borrower's voluntary payment of a loan before maturity, made pursuant to a prepayment option in the contract, will not render the transaction usurious if the total interest received by the lender does not exceed the interest computed at the maximum lawful rate from the time the loan became available to the borrower to the absolute maturity date specified in the contract, especially where the pre-payment provision is entirely optional with the borrower. Based upon such ruling, this concept would not apply to render the subject loan in the instant matter usurious. *Id.*

51. The Court also finds persuasive on this issue the cases of *Connecticut Mutual Life Insurance Company v. Fisher,* 165 So.2d 182, 186 (Fla. 3d DCA 1964) (assuming a loan's default is an improper methodology to use in determining usury, as it would require one to assume that the loan was never intended to be paid back as contracted for, but rather such default was planned) and *Benson v. First Trust & Savings Bank,* 134 So. 493, 496 (Fla. 1931) ("if the loan runs for its full term as agreed on, [and the interest] will not equal or exceed 25 per centum per annum, the legal consequences of such an arrangement must be tested by the results contemplated by the parties on the assumption that both lender and borrower will fully carry out their agreement rather than the special results which may follow, but are not necessarily certain to ensue, when the borrower breaches a covenant").

52. Thus, based upon the relevant Florida case law and related persuasive treatises and supplemental authorities, the "pre-payment penalty clause" under the Loan herein cannot be

permitted to influence the usury calculations undertaken by this Court as to the Loan's effective interest rate at inception. Doing so would require this Court to interpret an otherwise non-usurious Loan as charging an unlawful rate of interest, based upon a potential occurrence of a contract provision, which assumes less than full completion of that contract post-inception.

53. The Court need not reach the issue of intent with regard to the usurious nature of the Loan as the Court has determined the Loan itself is not usurious in nature.

54. The Court is compelled to comment that it certainly appeared at the beginning of this case, and throughout, that this was indeed a usurious loan under the laws of the state of Florida. However, after extensive calculations, it appears the Loan comes dangerously close to being usurious but is not usurious under the law. While the terms of the Loan certainly were not advantageous for the Debtor, upon further thought, the borrowers did receive all the benefits of the real property with no money down while the lenders took all the risk.

In conclusion, as illustrated by the Court's usury analysis and computations set forth herein, it is evident Defendants did not subject Plaintiff to an unlawful rate of interest in connection with the Loan. Accordingly, it is

ORDERED AND ADJUDGED that the Defendants', BFWEST, LLC, BFSPE, LLC, BUILDER FUNDING, LLC, and BUILDERFINANCIAL CORP.'s Motion for Summary Final Judgment on Usury Issues is GRANTED and Plaintiff, 8699 BISCAYNE, LLC's Cross-Motion for Partial Summary Judgment and Supplemental Motion for Final Summary Judgment on Count III Usury are both DENIED.

###

Copies furnished to:
James W. Carpenter, Esq.
Angelo & Banta, P.A.
515 East Las Olas Blvd., Ste. 850
Fort Lauderdale, FL 33301
Attorneys for Defendants

Attorney James Carpenter shall mail a copy of this Order to all interested parties immediately upon receipt and shall file a Certificate of Service with the Court.