

**ORDERED in the Southern District of Florida on March 22, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

8699 BISCAYNE, LLC,

      Debtor.
_____/

8699 BISCAYNE, LLC, Debtor-in-Possession

    Plaintiff,

v.

INDIGO REAL ESTATE LLC, as assignee of
WESTLB AG, & WESTLB AG, a Foreign
Corporation, BUILDERFINANCIAL CORP.,
a Florida corporation; BUILDER FUNDING,
LLC, a Delaware limited liability company,
BFSPE, LLC, a Delaware limited liability
Company, BFWEST, LLC, a Delaware limited
Liability company,

      Defendants.
_____/

Case No.: 08-22814-AJC

Chapter 11

Adv. Pro. No. 08-01749-AJC

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS BFWEST, LLC, BFSPE, LLC, BUILDER FUNDING, LLC, AND BUILDERFINANCIAL CORP.**

This matter came before the Court for hearing on January 31, 2012 at 2:00 p.m., on a Motion for Summary Final Judgment on Fraudulent Transfer Issues ("the Motion") filed by Defendants BUILDERFINANCIAL CORP., BUILDER FUNDING, LLC, BFSPE, LLC and BFWEST, LLC [D.E. 326] (collectively referred to as the "Builder Defendants") and Plaintiff, 8699 BISCAYNE, LLC's ("8699 Biscayne" or "Debtor") Response in Opposition to the Motion (the "Response") [D.E. 344]. The Court having heard argument of the Parties, and having considered the Motion and Response, the documents attached thereto, and related documents filed in this action, grants the Motion.

I. **PRELIMINARY STATEMENT**

Plaintiff's Second Amended Complaint contains three (3) counts [D.E. 132]. Count I, which is the subject of this Order, seeks to avoid a mortgage as a fraudulent conveyance under the Federal Bankruptcy Code[1]. Count II seeks equitable subordination "of Defendants' claims". Count III asserts that Debtor's $4.2 million Note is usurious under Florida law.

On September 6, 2011, this Court entered its Memorandum Order Granting Builder Defendants' Motion for Summary Final Judgment on Usury Issues and Denying Plaintiff's Cross Motion for Partial Summary Judgment and Supplemental Motion for Final Summary Judgment on Count III (the "Memorandum Order") [D.E. 315]. The Memorandum Order dispensed with all usury claims by the Debtor under the Second Amended Complaint.

As set forth in this Court's Order Denying Motion for Rehearing/Reconsideration of Order Granting Defendants' Summary Final Judgment on Usury Issues, the remaining cause of

---

[1] The Debtor specifically demands judgment against Defendants "determining that the Transfer by 8699 Biscayne to or for the benefit of the Defendants was fraudulent and avoidable and declaring the Note and Mortgage null and void under 11 U.S.C. §544 and 550."

action before this Court is the Debtor's allegations of fraudulent transfer (Count I) [D.E. 322], because even though it has not yet done so, the Debtor has advised this Court that it would be dismissing the equitable subordination claim against the Builder Defendants (Count II) [D.E. 322].

In their Motion, the Builder Defendants seek summary final judgment as a matter of law as to the remaining allegations of fraudulent transfer (Count I). Defendants assert the loan documents, including the Note and Mortgage, between the Debtor and the Builder Defendants cannot be avoided under applicable federal or state law because such transaction involved the exchange of reasonably equivalent value.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

On or about January 12, 2006, Jason Vance, Tamara Vance, and Michael Scaglione, on behalf of themselves and an entity to later be formed, which became the Debtor, originally requested a loan for the construction of a certain project from BUILDERFINANCIAL CORP., which request led to a Commitment Letter dated January 12, 2006 that established the terms of the contemplated loan, and expressed the agreed conditions under which BUILDERFINANCIAL CORP. would make the contemplated loan [D.E. 132, Exh. 3, Exh. 1].

Among other items, the Commitment Letter provided for the issuance of a loan by BUILDERFINANCIAL CORP., through its affiliated entity BUILDER FUNDING, LLC, to the Debtor with the maximum collective amount of the loan advances thereunder to total $4,247,150.00 over a term of twenty-seven (27) months with a stated interest rate of eight percent (8%) per annum [D.E. 132, Exh. 3, Exh. 1]. The terms of this Commitment Letter were incorporated by reference into all of the related Loan documents, including the Note and Mortgage, which are at issue in this case.

On or about January 20, 2006, consistent with the provisions of the Commitment Letter, and consistent with the earlier request of Jason Vance, Tamara Vance, and Michael Scaglione, BUILDERFINANCIAL CORP., through its affiliated entity BUILDER FUNDING, LLC, did make a $4,247,150.00 loan to the Debtor (the "Loan"), as evidenced by the Note dated as of January 20, 2006, executed by Jason Vance and Michael Scaglione, as managers on behalf of the Debtor, and made payable to BUILDER FUNDING, LLC, in the original principal amount of $4,247,150.00 [D.E. 132, Exh. 3, Exh. 4].

The Loan Closing Statement, dated January 20, 2006, reflected the following loan expenses being owed by Plaintiff for the Loan:

| | |
|---|---|
| Commitment Fee[2]: | $5,000.00 |
| Discount Points[3]: | $613,400.00 |
| Facility Fee[4]: | $53,750.00 |
| Origination Fee[3]: | $700,000.00 |
| Loan Inspection Fee[3]: | $100.00 |
| Construction Administration Fee[3]: | $500.00 |
| Underwriting Fee[3]: | $500.00 |
| Project Fee[3]: | $500.00 |
| Total Fees | $1,373,750.00 |

[D.E. 132, Exh. 3]

Pursuant to the terms of the Loan, the remaining $630,000.00 in available funds was allocated into an Interest Reserve for the sole benefit of the Debtor for use toward the payment of monthly interest on the initial disbursement of $3,617,150.00, and interest on any such later disbursements made under the Loan [D.E. 307, Page 1]. The Debtor was under no obligation to use the funds allocated to the Interest Reserve for the payment of monthly interest on those Loan amounts actually advanced to or on behalf of the Debtor [D.E. 132, Exh. 3, Exh. 2 and 4].

---

[2] Paid outside of closing to Builder Funding, LLC
[3] Paid to Builder Funding, LLC
[4] Paid to BuilderFinancial, Corp.

4

As evidenced by the BUILDERFINANCIAL CORP. Disbursement Log, the Debtor received, on its behalf, $3,617,150.00 of the maximum $4,247,150.00 at the closing of the Loan (the "Loan Disbursement Log) [D.E. 307, Page 1]. These sums were also reflected as being disbursed for the benefit of the Debtor under the Loan Closing Statement, as acknowledged by the Debtor (the "Loan Closing Statement") [D.E. 132, Exh.3, Exh. 3]. The remaining $630,000.00 Interest Reserve under the Loan, was allocated for the sole benefit of Plaintiff for use toward the payment of monthly interest on the initial disbursement of $3,617,150.00 [D.E. 307, Page 1].

Beginning in January 2006, interest began to accrue against the $3,617,150.00 initial disbursement funded to the Debtor. The payment of this monthly interest was advanced on behalf of the Debtor from the $630,000.00 held in the Interest Reserve [D.E. 307, Pages 1 and 3]. Subsequent monthly interest payments due under the Loan were calculated on the funded amount of the Loan which had been then-disbursed to or on behalf of the Debtor, which included the initial disbursement of $3,617,150.00 and those funds periodically advanced from the Interest Reserve which were advanced to pay on-going monthly interest payments due on the Loan [D.E. 307, Pages 1 and 3]. No interest was charged upon the Interest Reserve until such sums had been advanced to the Debtor for the payment of monthly interest charges on the Loan.

By January 31, 2008, the entirety of the Interest Reserve had been disbursed to the Debtor to cover those monthly interest payments due under the Loan and the full $4,247,150.00 face amount of the Note had been advanced to the Debtor [D.E. 307, Pages 1 and 3].

### III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated into bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is

5

entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party who moves for summary judgment bears the initial burden "to show the district court, by reference to materials on file, that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment also always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings…together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, at 323.

Once the moving party meets its initial burden, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Coats & Clark, Inc.*, 929 F. 2d at 608. The non-moving party may not rest upon mere allegations or denials in their pleadings, but must set forth specific facts, through affidavits or the other forms of evidence provided for by the rules. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *Celotex Corp.*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F. 3d 1290, 1294 (11th Cir. 1998).

However, a plaintiff may not amend its complaint through arguments in his brief in opposition to a motion for summary judgment. *See In re Andrz Corp., Inc.*, 296 F.Supp.2d 1356, 1367 (S.D. Fla. 2003) citing *Colovos v. Owens-Corning Fiberglass Corp.*, 1995 WL 609115, *9 (N.D. Ill. 1995) (there must be a point at which a plaintiff makes a commitment to the theory of

its case. Even the liberal pleading requirements of the federal rules do not permit plaintiffs to wait until the last minute to ascertain and refine theories on which they intend to build their case. This practice, if permitted, would waste the parties' resources, as well as judicial resources…and would surprise defendants, requiring the court to grant further time for discovery and continuances); *See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (claim was not raised in the plaintiff's second amended complaint, but rather was raised in response to the defendants' motion for summary judgment and, as such, was not properly before the court). Consistently with this reasoning, courts have refused to consider theories that a plaintiff asserts in response to a defendant's motion for summary judgment when the plaintiff failed to assert those theories first in its complaint.

**IV.    ARGUMENT**

        A.    <u>Debtor's Claims Under 11 U.S.C. §548 Are Time Barred</u>

The Debtor's Second Amended Complaint appears on its face to state a claim for fraudulent transfer solely under the Bankruptcy Code. Section 548 of the Bankruptcy Code allows the avoidance of a debtor's transfer in interest of property of the debtor that was made or incurred within one (1) year before the commencement of the bankruptcy case and that depletes the debtor's assets to the detriment of the bankruptcy estate. 11 U.S.C. §548(a). In the instant case, the alleged transfer did not take place within the required one year period, as explained herein. As such, this Court determines that the Debtor's claim based upon fraudulent transfers under §548 of the Bankruptcy Code is time-barred.

        B.    <u>Debtor's Response Improperly Attempts to Amend Adversary Complaint</u>

Notwithstanding the fact the Complaint appears to state a claim only under the Bankruptcy Code, the Debtor, at oral argument, represented to this Court that its claim for the constructive fraudulent transfer is based on the *Florida Statute Section 726.105(1)(b)*, only. [See

Transcript, Jan. 31, 2012, Page 14; 4-8]. However, Debtor's Response and argument attempt to improperly amend its Adversary Complaint by seeking avoidance of the subject loan under Florida law, rather than under bankruptcy law, as pled.

At the summary judgment stage, the proper procedure for the Debtor to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). The Debtor has not filed a Rule 15(a) motion, nor has it demonstrated compliance with Rule 15(a). Accordingly, Debtor's inclusion [of the constructive fraud claim under state law] in its Response and at oral argument is improper, and such cause of action is not properly before the Court.

### C.     Florida Statute §726.105 (1)(b)

Even if the Court were to consider Debtor's constructive fraud claim to be properly before the Court, such claim would fail. The applicable Florida state law relating to fraudulent transfers is the Florida Uniform Fraudulent Transfer Act found under Chapter 726, Florida Statutes ("FUFTA"). To establish a cause of action for fraudulent transfer under Florida Statute §726.105(1)(b), a debtor must satisfy the criteria set forth therein as applicable to the alleged transfer, which statutory provision states:

> (1)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (b)     Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > 1.     Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > 2.     Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

### D. Reasonably Equivalent Value

The purpose of avoiding transfers unsupported by "reasonably equivalent value" is to protect creditors against the depletion of a bankrupt's estate. *See Kipperman v. Onex Corp.*, 411 B.R. 805, 837 (N.D. Ga. 2009). This provision does <u>not</u> authorize voiding a transfer which "confers an economic benefit upon the debtor," either directly or indirectly. *Id.* citing *In re Rodriguez*, 895 F.2d 725, 727 (11th Cir. 1990). In that situation, "the debtor's net worth has been preserved," and the interests of the creditors will not have been injured by the transfer. *Id.*

The issue of whether a debtor received reasonably equivalent value must be evaluated as of the date of the transaction. Court's should not look with hindsight at a transaction because such an approach could transform fraudulent conveyance law into an insurance policy for creditors. *See Kipperman*, 411 B.R. at 837 citing *In re Joy Recovery Tech. Corp.* 286 B.R. 54, 75 (Bank. N.D. Ill. 2002); *In re Morris Communications NC, Inc.*, 914 F.2d 458, 466 (4th Cir. 1990) (neither subsequent depreciation in nor appreciation in value of the consideration affects the value question whether reasonable equivalent value was given). By its terms and application, the concept of "reasonably equivalent value" does not demand a precise dollar-for-dollar exchange. See *In re Taylor*, 386 B.R. 361 (Bankr. S.D. Fla. 2008) citing *Advanced Telecommunication Network, Inc., v. Allen*, 290 F. 3d 1325, 1336 (11th Cir. 2007). The benefit received need not be entirely "direct"; a transaction can have indirect benefits. *Id.* citing *Schaps v. Just Enough Corporation*, 93 B.R. 379, 389-90 (Bankr. E.D. Penn. 1988) (finding reasonable value where a company transferred $500,000 to fighting shareholders and forgave shareholder loans totaling $600,000).

The Debtor argues that the issue of whether reasonably equivalent value was received in a transaction is a question of fact. *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003). However, the Fifth Circuit observed that certain transactions can give the debtor reasonably equivalent

9

value "as a matter of law." *See also M. Silverman* Laces, 01 Civ. 6209(DC), 2002 WL 31412465 (S.D.N.Y. Oct. 24, 2002). In this case, there is no dispute about the amount of the loan proceeds realized by the Debtor or the security interest granted to the Builder Defendants.

A two-step analysis is necessary to determine whether a debtor has received reasonably equivalent value in exchange for its transfer of an interest in its property to another. First, it must be shown that the debtor received value; secondly, the Court must determine whether the value was reasonably equivalent to what the debtor gave up. *See In re GTI Capital Holdings, LLC*, 373 B.R. 671 (Bankr. D.Ariz. 2007) citing I*n re United Energy* Corp, 944 F.2d 589, 597 (9th Cir. 1991); *In re Anand*, 239 B.R. 511, 517 (N.D. Ill. 1999).

1. *The Debtor Received Value*

For purposes of fraudulent transfer analysis, "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. §548(d)(2)(A). A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is, in fact, substantially contemporaneous. See *Fla. Stat. §726.104(3)*. In the present action, there is no dispute that the Debtor has received "value"— a new loan totaling $4,247,150.00 — in a contemporaneous transaction with the Builder Defendants, as more particularly described in this Court's prior Order [D.E. 315]:

(a) The Debtor received, on its behalf, $3,617,150.00 of the maximum $4,247,150.00 at the closing of the Loan;

(b) The remaining $630,000.00 Interest Reserve under the Loan was allocated for the sole benefit of Plaintiff for use toward the payment of monthly interest on the initial disbursement of $3,617,150.00, and any such other disbursements made under the Loan; and

(c) By January 31, 2008, the entirety of the Interest Reserve had been disbursed to the Debtor to cover those monthly interest payments due under the Loan and the full $4,247,150.00 face amount of the Note had been advanced to the Debtor.

Had the Debtor not executed the loan documents and received $4,247,150.00, the Debtor would not have been able to take title to the property or be entitled to develop the project.

2. *The Value the Debtor Received Was "Reasonably Equivalent" to What it Exchanged*

Courts have found that reasonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value if it gets roughly the value it gave." *See VFB, LLC v. Campbell's Soup Co.*, 482 F. 3d 624, 631 (3d Cir. 2007).

In the case at bar, the Builder Defendants loaned the Debtor $4,247,150.00 that was to be secured by the Debtor's real property, as the Debtor had authorized the Builder Defendants to do at the time the Debtor received such funds. The Debtor was afforded the full face amount of the Note and given access and full use, benefit, and enjoyment of all such funds, using such funds to pay fees, interest and other charges due and to acquire and develop the related real property that stood as security under the Mortgage. *See In re 21st Century Satellite Communications, Inc.*, 278 B.R. 577, 582 (Bankr.M.D.Fla. 2002) (under Florida fraudulent transfer law, the determination as to whether the debtor received "reasonably equivalent value" should be based on the specific facts and circumstances relevant to the transaction).

The record before the Court plainly demonstrates that there was more than sufficient consideration flowing between the parties in conjunction with the loan documents. The obligations that were owed by the Debtor at the time of the closing were satisfied and paid from the sums reflected under the loan, which the Debtor received.

The Debtor's valuation of the collateral at the time of the Loan is irrelevant as the Debtor received "reasonably equivalent" value when it secured the $4,247,150.00 Loan, because such loan amount equaled or exceeded the value of the Debtor's property. *See In re Kaplan Breslaw Ash, L.L.C.,* 264 B.R. 309, 328-30 (Bankr. S.D. N.Y. 2001).

11

Accordingly, the Debtor received reasonably equivalent value in exchange for the security interest it granted to the Builder Defendants. See *In re Northern Merchandise, Inc.*, 371 F.3d 1056 (9th Cir. 2004) (debtor that received all of the proceeds of a loan to its shareholders was thereby provided with "reasonably equivalent value" for security interest which it granted to lender in corporate assets); *See In re Greenbrook Carpet Co., Inc.*, 722 F.2d 659, 661 (11th Cir. 1984) (upholding summary judgment in favor of the lender and finding that lender could properly loan debtor funds knowing debtor would use the funds for a speculative venture).

Notably, if the Builder Financial loan is avoidable, the effect would be to permit the Debtor to be awarded damages based upon a loan which is no longer held by the Builder Defendants, secured by collateral which the Debtor no longer owns. The Debtor has already entered into a settlement with the holder of the note and the mortgage who has absolved the Debtor of liability. The subject collateral has been sold and the Estate has received the proceeds from the sale. Such actions are fundamentally counter to the statutory purpose of such avoidance power. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' BUILDERFINANCIAL CORP., BUILDER FUNDING, LLC, BFSPE, LLC and BFWEST, LLC Motion for Summary Final Judgment on Count I of the Amended Complaint is GRANTED.

###

Submitting Attorney:

    JAMES W. CARPENTER, ESQ.
    Fla. Bar No.: 654256
    Email: jwc@angelolaw.com
    ANGELO & BANTA, P.A.
    Attorneys for BFWEST, LLC, BFSPE, LLC, BUILDER FUNDING, LLC, AND BUILDERFINANCIAL CORP.,
    515 East Las Olas Blvd., Ste. 850
    Fort Lauderdale, FL 33301
    Telephone:    954-766-9930
    Facsimile:    954-766-9937